**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Austen Yufenyuy</u>

   v.                                              Case No. 22-cv-443-AJ

<u>Warden, FCI Berlin</u>

**O R D E R**

Austen Yufenyuy, a federal prisoner incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), filed a petition for a writ of habeas corpus (Doc. No. 1) under 28 U.S.C. § 2241 alleging that the Federal Bureau of Prisons ("BOP") failed to apply First Step Act ("FSA") time credits he has earned to his sentence.  Before the Court is Mr. Yufenyuy's supplemental memorandum (Doc. No. 16) to his petition, filed through counsel, which asserts that the BOP has failed to apply certain time credits petitioner was eligible to earn under the FSA between June 9, 2021 and November 24, 2021.  Petitioner claims that if those time credits were to be applied to his sentence, he would be entitled to immediate release from BOP custody upon time served.

The respondent counters that, under the BOP's regulation implementing the FSA, 28 C.F.R. § 523.42(a), Mr. Yufenyuy is entitled only to FSA time credits he has earned since November 24, 2021, and that his release from BOP custody will not occur until May 12, 2023.  For reasons stated below, the Court grants the § 2241

petition and releases the petitioner from BOP custody upon time served.[1]

## Standard

A federal prisoner claiming he is "in custody in violation of the Constitution or laws or treaties of the United States" may petition the federal District Court for habeas relief. 28 U.S.C. § 2241(c)(3). Section 2241 allows a federal prisoner "to challenge the execution of (rather than the imposition of) his or her sentence." Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015). The remedy under § 2241 has been traditionally available to prisoners challenging the computation of their sentences by the BOP. See Thornton v. Sabol, 620 F. Supp. 2d 203, 206 (D. Mass. 2009). The petitioner bears the burden of proving that his continuing detention violates his federal rights. See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

---

[1] Although courts generally require prisoners to exhaust their BOP administrative remedies before filing § 2241 petitions challenging the BOP's execution of their sentence, see Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999), that common-law exhaustion requirement is subject to exceptions, including futility. See, e.g., Idada v. Spaulding, 456 F. Supp. 3d 294, 297 (D. Mass. 2020). At the February 27, 2023 hearing, the Warden advised the Court that he is waiving an exhaustion defense in this matter.

**Background**[2]

On June 9, 2021, Mr. Yufenyuy was sentenced to a sixty-six month term of imprisonment in the Northern District of Texas.  See United States v. Yufenyuy, No. 3:19-cr-00484-K-1 (N.D. Tex. June 9, 2021).  After Mr. Yufenyuy was sentenced, he was initially returned to the facility where he had been detained pretrial.  He was then sent to facilities in Maryland and Oklahoma before being transferred to his designated BOP facility, a private facility in Texas, on November 24, 2021.  Mr. Yufenyuy was transferred to FCI Berlin on April 6, 2022.

Mr. Yufenyuy asserts that between June 9, 2021 and November 24, 2021, he was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in what programming was available to him.  The respondent has not disputed these assertions.

On December 3, 2021, shortly after arriving at his initial BOP-designated facility, Mr. Yufenyuy underwent an assessment by BOP staff members and determined to be a low risk for recidivating.  See Feb. 11, 2023 BOP FSA Time Credit Assessment of Austen Yufenyuy (Doc. No. 20-1).  Since his initial recidivism risk assessment in December 2021, Mr. Yufenyuy has consistently maintained a low recidivism risk level.  See id.

---

[2] The parties agree on the facts relevant to the Court's decision in this matter, as set forth in this Order, unless otherwise noted.

Mr. Yufenyuy, who is the subject of a detainer lodged with the BOP by United States Immigration and Customs Enforcement ("ICE"), filed this § 2241 petition in 2022 asserting that the BOP had violated his rights under the FSA by failing to apply any FSA earned time credits to his sentence because of his detainer.  On February 6, 2023, after Mr. Yufenyuy initiated this action, the BOP amended its policy to remove any bar to applying FSA time credits to a prisoner's sentence based on the existence of a detainer.  Accordingly, that issue, which was the focus of the Warden's summary judgment motion (Doc. No. 3), has become moot.

However, Mr. Yufenyuy's claim that the BOP has failed to apply FSA time credits he earned between June 9, 2021 and November 24, 2021, remains at issue.  To facilitate resolution of this matter, this Court issued an Order on February 22, 2023, directing the respondent to file "up-to-date documentation of: the petitioner's sentence calculation, FSA Time Credit assessments, risk assessments, or any other matter impacting the calculation of the petitioner's sentence."  Feb. 22, 2023 Order (Doc. No. 17, at 2).  The Warden filed a response (Doc. No. 19) to the petitioner's Supplemental Memorandum and a response (Doc. No. 20) to the February 22, 2023 Order.  The Court held a hearing in this matter on February 27, 2022, at which both parties appeared through counsel.

**Discussion**

I. The First Step Act

On December 21, 2018, Congress enacted the FSA,[3] "with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism." United States v. Venable, 943 F.3d 187, 188 (4th Cir. 2019). The FSA requires the BOP to implement a risk and needs assessment system to track each prisoner's risk of recidivism and to expand access to "productive activities" and other programs to reduce the risk of recidivism by federal prisoners. 18 U.S.C. § 3621(h). The FSA also establishes incentives for successful participation in such programs and activities, including, at issue here, a new type of sentencing time credit to be applied towards the date of a prisoner's access to prerelease custody or a term of supervised release. See id. § 3632(d)(4).

The FSA provides time credits for successful completion of evidence-based recidivism reduction programs ("EBRRs") and productive activities ("PAs"). See id. at § 3632(d)(4)(A). The FSA requires that prisoners who complete EBRRs or PAS, "except an ineligible prisoner under subparagraph (D)," "shall earn time credits" for successfully completing such programming. Id. at § 3632(d)(4)(A). The FSA allows eligible prisoners to earn ten days

---

[3] See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (enacted Dec. 21, 2018).

of time credits, or in some cases, fifteen days of credits, for every 30 days of EBRRs and PAs they participate in while serving the custodial component of their sentences.  See id. § 3632(d)(4)(A), (B), (D).  FSA time credits, when applied, advance the date when the prisoner will be placed in "prerelease custody" (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release.  See Hedges v. U.S. Marshals Serv., No. 5:22-cv-294-DCR, 2022 U.S. Dist. LEXIS 212385, at *3, 2022 WL 17177630, at *3 (E.D. Ky. Nov. 23, 2022); see also 18 U.S.C. § 3624(g)(3) (BOP may apply up to twelve months of earned time credits to advance the date a prisoner begins to serve a term of supervised release).

The FSA also prohibits certain prisoners, or prisoners in certain circumstances, from earning credits, and disqualifies certain prisoners who may earn credits from having those credits applied to their sentences.  Among such circumstances, as relevant here, the FSA prohibits prisoners from earning time credits during the period when he or she is in "official detention" but has not yet reached the date his or her "sentence commences under [18 U.S.C. §] 3585(a)."  18 U.S.C. § 3632(d)(4)(B)(ii).

The BOP has promulgated regulations for executing and administering time credits under the FSA.  See 28 C.F.R. § 523.40(a).  The stated purpose of those regulations "is to describe procedures for the earning and application of Time Credits as

6

authorized by 18 U.S.C. § 3632(d)(4)." Id.  The regulation Mr. Yufenyuy challenges here, 28 C.F.R. § 523.42(a), concerns the date upon which a prisoner can begin to earn FSA time credits.  That regulation states:

> An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

28 C.F.R. § 523.42(a).

## II. *Chevron* Analysis

The parties here agree that the Court -- in considering Mr. Yufenyuy's challenge to 28 C.F.R. § 523.42(a) as that regulation has been applied to him, and the BOP's determination of the date when he first was able to earn FSA time credits -- should decide the matter by applying the two-step test set forth in Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  See generally Laparra-DeLeon v. Garland, 52 F.4th 514, 519 (1st Cir 2022).  "Under step one, we must determine whether Congress spoke clearly to the precise question before us.  If so, that is 'the end of the matter.'  If not, then we move to step two, where we defer to the [federal agency]'s interpretation of the statutory provision if it is reasonable."  Id.  (quoting and citing Chevron, 467 U.S. at 842-43).

Under Chevron, this Court first examines whether the plain language of the FSA establishes the date upon which a prisoner may

7

start to earn FSA time credits.  And only if the Court finds that the statute does not address that question will the Court go on to consider the substance of the regulation itself.

The pertinent provisions of the FSA concerning when time credits can -- and cannot -- be earned state the following:

> **(4) Time credits.—**
>
>> (A)  **In general.--**  A prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>>
>>> (i)  A prisoner shall earn 10 days of time credits for every 30 days of successful participation or productive activities.
>>>
>>> (ii) A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits . . . .
>>
>> (B)  **Availability**. -- A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed –
>>
>>> (i)  prior to the date of the enactment of [the FSA]; or
>>>
>>> (ii) <u>during official detention prior to the date that the prisoner's sentence commences under section 3585(a)</u>.

18 U.S.C. § 3632(d)(4)(A)-(B) (emphasis added).  Construed together, those provisions make it clear that prisoners "shall" earn time credits, at the statutory rate, for all qualified programs in which they successfully participate, except for the programs in which they participated while imprisoned either before the FSA was enacted, or

8

in detention before the date when their "sentence commence[d] under 3585(a)."

Section 3632(d)(4)(B)(ii) points to 18 U.S.C. § 3585(a) to provide a definition of when a "sentence commences," for purposes of defining when the prisoner's post-enactment completion of a program would not entitle him or her to FSA time credits.  Section 3585(a) -- and § 3632(d)(4)(B) by its reference to that statute – specifies "the date the defendant is received in custody awaiting transport to" his initial BOP-designated facility as the date his or her "sentence to a term of imprisonment commences" for purposes of determining whether he can begin to earn FSA time credits.  For Mr. Yufenyuy, the parties have agreed that under § 3585(a), June 9, 2021 is the date his "sentence to a term of imprisonment commence[d]."

Section 523.42(a) does not mirror the language in the FSA defining when a prisoner can begin earning FSA time credits.  Rather, that regulation specifies a different date as the date when a prisoner can begin to earn FSA time credits, namely, the date the prisoner ultimately arrives at his BOP-designated facility where his sentence will be served.  See 28 C.F.R. § 523.42(a).  When that regulation is applied to Mr. Yufenyuy, November 24, 2021 is the earliest date he could earn time credits despite the fact that his "sentence to a term of imprisonment commence[d]" on June 9, 2021.

The Court's Chevron inquiry starts, and ends, at step one in this case because the plain language of the FSA, and of § 3585(a), clearly establishes the date upon which the FSA must allow prisoners

9

to start earning FSA time credits. There is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA. There is also no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits. The Court, therefore, must give effect to the statutory text. See Laparra-DeLeon, 52 F.4th at 519; see also Chevron, 467 U.S. at 842-43.

Here, the date established by the plain language of the FSA upon which Mr. Yufenyuy was entitled to begin earning FSA time credits is June 9, 2021. The regulation's definition of a different date is contrary to the express language of the FSA. The respondent's interpretation of Mr. Yufenyuy's eligibility for earning time credits under the FSA, as expressed in 28 C.F.R. § 523.42(a), is not entitled to deference under Chevron, as it contravenes the plain language of the FSA, 18 U.S.C. § 3632(d)(4)(B)(ii).

Therefore, this Court finds that 28 C.F.R. § 523.42(a) cannot be applied to prevent Mr. Yufenyuy from earning time credits to which he is entitled under the plain language of the FSA. Mr. Yufenyuy is allowed to earn FSA time credits beginning on June 9, 2021.

While this court might otherwise direct the respondent to recalculate Mr. Yufenyuy's time credits in light of the Court's Chevron analysis, the parties here agreed at the February 27, 2023

Case 1:22-cv-00443-AJ Document 21 Filed 03/07/23 Page 11 of 11

hearing that should the Court find, as it now does, that the regulation does not survive this Court's Chevron analysis, Mr. Yufenyuy would be entitled to immediate release from BOP custody. Accordingly, Mr. Yufenyuy's petition (Doc. Nos. 1, 16) is GRANTED and the Court directs that he be released from BOP custody upon time served.[4]

## Conclusion

For the foregoing reasons, the Court directs as follows:

1. Mr. Yufenyuy's petition (Doc. Nos. 1, 16) is GRANTED.

2. The respondent's motion for summary judgment (Doc. No. 3) is DENIED as moot.

3. The respondent is directed to release Mr. Yufenyuy from BOP custody upon time served.

4. The clerk's office is directed to enter judgment and close the case.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

March 7, 2023

cc: Cathy J. Green, Esq.
    Seth R. Aframe, Esq.

---

[4] The court expresses no opinion regarding the application of the ICE detainer to Mr. Yufenyuy's circumstances.